UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
EMANUELE RIGANO, MARLENE SEPULVEDA
LIDIA FOCACCI, BEATRICE CAROLINA
BRUSCOLI, and MARTINA CHARLTON,                           COMPLAINT
Individually and on Behalf of All Other Persons
Similarly Situated,                                       JURY DEMAND

                              Plaintiffs,

          - against -

PICCOLA CUCINA GROUP, PICCOLA CUCINA
GROUP, INC., MGM THOMPSON LLC,
R&G SOHO LLC, R&G SPRING LLC,
M&G 60th STREET LLC, PHILIP GUARDIONE
and ALFIO SCRIVANO, Jointly and Severally

                              Defendants.
-----------------------------------------------------------------x

Plaintiffs EMANUELE RIGANO, BEATRICE CAROLINA BRUSCOLI, MARTINA

CHARLTON, LIDIA FOCACCI, and MARLENE SEPULVEDA, appearing by their attorneys,

MANGAN GINSBERG LLP, hereby allege against the defendants as follows:

I.      PRELIMINARY STATEMENT

1.      Plaintiffs EMANUELE RIGANO, BEATRICE CAROLINA BRUSCOLI,

MARTINA CHARLTON, LIDIA FOCACCI, and MARLENE SEPULVEDA ("Plaintiffs"),

former waiters and bussers allege on behalf of themselves and other similarly situated current

and former employees of defendants' restaurants who elect to opt into this action under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 216 (b), claim that their employers, the defendants

PICCOLA CUCINA GROUP, PICCOLA CUCINA GROUP, INC., MGM THOMPSON LLC,

R&G SOHO LLC, R&G SPRING LLC, M&G 60th STREET LLC, PHILIP GUARDIONE and

ALFIO SCRIVANO, entities and individuals who own and manage several restaurants in New

York City, violated the FLSA and the New York Labor Law ("NYLL"), and applicable

regulations thereunder, including the New York Hospitality Wage Order, by failing to pay Plaintiffs minimum wages for all hours worked, premium pay for overtime, and spread-of-hour pay, misappropriating Plaintiffs tips through an illegal tip pool, and by failing to provide Plaintiffs with wage notices and adequate wage statements. Plaintiffs seek, pursuant to 29 U.S.C. § 216 and NYLL §§ 663 and 198, monetary damages against the Defendants for: (i) unpaid minimum wages for all hours Plaintiffs worked, (ii) misappropriated tips (iii) unpaid premium pay for overtime hours worked, (iv) "spread-of-hours" pay, (v) wage notice violations; (vi) wage statement violations, (vi) liquidated damages, (vii) prejudgment interest and (viii) attorney's fees and costs.

2.      Plaintiffs further complain on behalf of a class of other similarly situated current and former employees of Defendants' restaurants pursuant to Fed. R. Civ. P. 23, for entitlement to (i) unpaid minimum wage, overtime pay, misappropriated tips and spread-of-hours pay, as required by the New York Labor Law ("NYLL") §§ 650 et seq., including Hospitality Wage Order §§ 146-1.2, 146-1.4, and 146-1.6, and (ii) statutory damages under NYLL 663 and the Wage Theft Prevention Act under NYLL §§ 195, 196-d and 198 for the above stated violations as well as for failing, to provide wage notices, failure to provide accurate wage statements, and failure to maintain payroll records, including unpaid wages, misappropriated tips, liquidated damages, prejudgment interest and reasonable attorney's fees.

3.      In addition to the wage and hour claims, plaintiffs Emanuele Rigano and Marlene Sepulveda assert claims against Defendants under the New York City Human Rights Law for unlawful discrimination in their employment with Defendants. Defendants discriminated against Mr. Rigano on the basis of sexual orientation, by creating a hostile work environment, which lead to his constructive termination, caused him emotional injury, was used to force him to work

additional unpaid hours, and negatively affected his earnings. Defendants discriminated against Ms. Sepulveda on the basis of her national origin, sex and gender, by creating a hostile work environment and providing her fewer economic opportunities afforded to persons of Italian background and origin, which lead to her constructive termination, emotional injury, and negatively affected her earnings while working for Defendants.

II.    <u>JURISDICTION</u>

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. §216 (b).

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendants' businesses are located in this district, and the acts which give rise to this complaint took place in this district.

III.    <u>THE PARTIES</u>

***Plaintiffs***

6.    Plaintiff Emanuele Rigano is an individual residing in New Jersey and was employed by Defendants as a busser and server from July 2017 to October 2019.

7.    Emanuele Rigano consents in writing to being a party to this action pursuant to 29 U.S.C. 216 (b), which consent is attached hereto and incorporated by reference.

8.    Plaintiff Marlene Sepulveda is an individual residing in New York and was employed by Defendants as a busser and server from March 2019 to November 2019.

9.    Marlene Sepulveda consents in writing to being a party to this action pursuant to 29 U.S.C. 216 (b), which consent is attached hereto and incorporated by reference.

3

10.    Plaintiff Lidia Focacci is an individual residing in New York and was employed by Defendants as a busser and server from June 2017 to December 2017.

11.    Lidia Focacci consents in writing to being a party to this action pursuant to 29 U.S.C.  216 (b), which consent is attached hereto and incorporated by reference.

12.    Plaintiff Beatrice Carolina Bruscoli is an individual residing in New York and was employed by Defendants as a busser and server from October 2018 to February 2019.

13.    Beatrice Carolina Bruscoli consents in writing to being a party to this action pursuant to 29 U.S.C.  216 (b), which consent is attached hereto and incorporated by reference.

14.    Plaintiff Martina Charlton is an individual residing in New York and was employed by Defendants as a busser and server from April 2019 to June 2019.

15.    Martina Charlton consents in writing to being a party to this action pursuant to 29 U.S.C.  216 (b), which consent is attached hereto and incorporated by reference.

### *Corporate Defendants*

16.    Defendant MGM Thompson LLC is a New York limited liability company that owns and operates Piccola Cucina Estiatorio Restaurant (the restaurant is referred to by Defendants and herein as "Thompson") located at 75 Thompson Street, in Manhattan.

17.    Defendant R&G Soho LLC is a New York limited liability company that owns and operates Piccola Cucina Enoteca Restaurant (the restaurant is referred to by Defendants and herein as "Prince") located at 184 Prince Street, in Manhattan.

18.    Defendant R&G Spring LLC is a New York limited liability company that owns and operates Piccola Cucina Osteria Restaurant (the restaurant is referred to by Defendants and herein as "Spring") located at 196 Spring Street, in Manhattan.

19.     Defendant M&G 60th Street LLC is a New York limited liability company that owns and operates Piccola Cucina Uptown (the restaurant is referred to by Defendants and herein as "Uptown") located at 106 East 60th Street, in Manhattan.

20.     The Defendants' Manhattan restaurants, Thompson, Spring, Prince and Uptown, are referred to collectively  herein as the "Restaurants."

21.     Upon information and belief, Defendant Piccola Cucina Group, Inc. is a New York Corporation that owns, manages, and operates the four Restaurants in New York.

22.     Upon information and belief, Defendant "Piccola Cucina Group" is d/b/a used to describe the single enterprise that manages and operates the Restaurants, as well as restaurants in Miami, Florida, Ibiza, Spain and Red Lodge, Montana, that are commonly owned and managed by the owners and managers of the Restaurants.

23.     The entities, MGM Thompson LLC, M&G 60th Street LLC, R&G Spring LLC, R&G Soho LLC, together with Piccola Cucina Group and Piccola Cucina Group. Inc. (the "Corporate Defendants") are part of a single integrated enterprise that jointly employed Plaintiffs and those similarly situated at all relevant times.

*Individual Defendants*

24.     Defendant Phillip Guardione, an individual, who, upon information and belief, is a resident of New York State and New York City, and the founder and the primary owner of the Corporate Defendants. According to the Piccola Cucina website, Phillip Guardione is the Executive Chef of the Piccola Cucina Group.

25.     Defendant Alfio Scrivano, an individual, who, upon information and belief, is a resident of New York State and New York City, an owner and the General Manager of the Restaurants.

26.     Phillip Guardione and Alfio Scrivano (the "Individual Defendants") and they are all subject to the same general management and the payroll practices described herein.

27.     Phillip Guardione and Alfio Scrivano actively manage the Corporate Defendants and have actual ultimate authority with respect to hiring and firing employees, disciplining employees, and payroll practices at the Restaurants.

28.     Defendants Phillip Guardione and Alfio Scrivano were "employers" of the Plaintiffs, and upon information and belief, continue to be employers of current FLSA Collective Plaintiffs and members of the Class, as that term is used in the Fair Labor Standards Act and the New York Labor Law.

29.     The integrated enterprise is a Large Employer, as that turn is understood pursuant to the Hospitality Wage Order, and has annual gross volume of sales in excess of $500,000.

30.     The Restaurants have an annual gross volume of sales in excess of $500,000.

31.     All the Restaurants share a website, www.piccolacucinagroup.com, and operate under the name of defendant

32.     The Restaurants have centralized control of labor operations, such as payroll and human resources.

33.     The Restaurants are run out of one office at 75 Thompson Street under the name Piccola Cucina Group.

34.     At all relevant times, the Corporate Defendants have been, and continue to be, employers who engage in interstate commerce and/or production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

IV.     FACTS

A.  WAGE & HOUR CLAIMS

### *Plaintiff Emanuele Rigano*

35.    Emanuele Rigano was employed by Defendants from July 2017 until about October 11, 2019.

36.    Defendants employed Emanuele as a busser and then as a waiter.

37.    Emanuele regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

38.    Emanuele received paychecks from defendant MGM Thompson LLC.

39.    Defendants, according to their continuing policy, required Emanuele to train at, and be available to work shifts at three restaurants, Prince, Spring and Thompson.

40.    Defendants, according to their continuing policy, did not pay Emanuele for the first three "training" shifts that he worked at Defendants' Restaurants.

41.    Emanuele worked an average of five shifts, for 43 hours, per week.

42.    During his employment, Defendants required Emanuele to work lunch shifts from 10:45 a.m. until 5:30 p.m.; dinner shifts at Spring and Prince at 5:00 p.m., until about 1:00 a.m. on week nights, and 2:00 a.m. on weekend nights; and dinner shifts at Thompson from 4:00 pm until approximately 1:30 a.m. on weekday nights, and as late as 3:00 a.m. on weekends.

43.    Defendants paid Emanuele for dinner shifts from the scheduled start of the shift, until 11:00 pm on weekdays, and 12:00 am on weekends, according to Defendants' policy.

44.    On average, Emanuele and other similarly situated employees were required to work approximately 2-3 unpaid hours each dinner shift.

45.    Defendants never notified by Emanuele that his tips were used to offset his wages.

46.    Defendants paid Emanuele at a rate of $7.25 per hour from about July 2017 until sometime in 2018; $8.00 per hour thereafter until December 30, 2018; $9.00 per hour thereafter

until January 27, 2019; $10.00 per hour thereafter until March 10, 2019; $10.20 per hour

thereafter until April 21, 2019; and $11.35 per hour thereafter until the end of his employment.

47.    Defendants also withheld a portion of Plaintiff Emanule's tips each shift to pay

Defendant Alfio Scrivano and members of the kitchen staff working in the Restaurants.

48.    Defendants did not give Emanuele written notice of his rates of pay, claimed

allowances, and other such information as required by 12 NYCRR §146-2.2 and NYLL §195(1).

49.    Over the 116 weeks Emanuele was employed by Defendants, he worked

approximately 554 shifts, for an approximate total of 4,984 hours, approximately 566 of which

were overtime hours, and approximately 126 shifts of ten or more hours.

50.    Defendants, as a policy, did not pay Emanuele or other bussers and waiters

overtime premium when Emanuele worked more than forty hours in a work week.

51.    Defendants, as a policy, did not pay Emanuele or other bussers and waiters

spread-of-hour pay of an additional hour of minimum wage rate pay when Emanuele worked ten

or more hours in a single day.

### *Plaintiff Marlene Sepulveda*

52.    Marlene Sepulveda was employed by Defendants from March 2019 until about

November 15, 2019.

53.    Defendants employed Marlene as a busser and then as a waiter.

54.    Marlene regularly handled goods in interstate commerce, such as food and other

supplies produced outside the State of New York.

55.    Marlene received paychecks from R&G Soho LLC.

56.    Defendants, according to their continuing policy, required Marlene to train at

Defendants' three restaurants: Prince, Spring and Thompson.

57.     Defendants, according to their continuing policy, did not pay Marlene for the first three "training" shifts that he worked at the Restaurants.

58.     Defendants required Marlene and other employees to be available to work shifts at three Restaurants, Prince, Spring and Thompson.

59.     Marlene worked an average of 4.5 shifts, for 34 hours, per week.

60.     During her employment, Defendants required Marlene to work lunch shifts from 10:45 a.m. until 5:30 p.m.; dinner shifts at Spring and Prince from 5:00 p.m. until about 1:00 a.m. on week nights, or 2:00 a.m. on weekend nights; and dinner shifts at Thompson from 4:00 pm until about 1:30 a.m. on weekday nights, and as late as 3:00 a.m. on weekends.

61.     Defendants only paid Marlene for dinner shifts until 11:00 pm on weekdays, and 12:00 am on weekends, according to Defendants' policy, though she was required to work later.

62.     On average, Marlene and other similarly situated employees were required to work approximately 2-3 unpaid hours each dinner shift.

63.     Defendants never notified Marlene that her tips were used to offset her wages.

64.     Defendants paid Marlene at a rate of $11.35 per hour.

65.     Defendants also withheld a portion of Marlene's tips each shift, which were used to pay Defendant Alfio Scrivano, and members of the kitchen staff working in the Restaurants.

66.     Defendants did not give Marlene written notice of her rates of pay, claimed allowances, and other such information as required by 12 NYCRR §146-2.2 and NYLL §195(1).

67.     Over the 34 weeks Marlene was employed by Defendants, she worked approximately 153 shifts, for an approximate total of 1227 hours, approximately 66.25 of which were overtime hours, and approximately 23 shifts of ten or more hours.

68.     Defendants, as a policy, did not pay Marlene or other bussers and waiters overtime premium for the hours she worked that were greater than forty hours in a work week.

69.     Defendants, as a policy, did not pay Marlene spread-of-hour pay of an additional hour of minimum wage rate pay when she worked ten or more hours in a single day.

### *Plaintiff Lidia Focacci*

70.     Lidia Focacci was employed by Defendants from June 2017 until Dec. 3, 2017.

71.     Defendants employed Lidia as a busser and then as a waiter.

72.     Lidia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

73.     Lidia received paychecks from MGM Thompson LLC.

74.     Defendants, according to their continuing policy, required Lidia to train at Defendants' three restaurants: Prince, Spring and Thompson.

75.     Defendants, according to their continuing policy, did not pay Lidia for the first three "training" shifts that he worked at the Restaurants.

76.     Defendants required Lidia and other employees to be available to work shifts at three Restaurants, Prince, Spring and Thompson.

77.     Lidia worked an average of 4 shifts, for 30 hours, per week.

78.     During her employment, Defendants required Lidia to work lunch shifts from 10:45 a.m. until 5:30 p.m.; dinner shifts at Spring and Prince from 5:00 p.m. until about 1:00 a.m. on week nights, or 2:00 a.m. on weekend nights; and dinner shifts at Thompson from 4:00 pm until about 1:30 a.m. on weekday nights, and as late as 3:00 a.m. on weekends.

79.     Defendants only paid Lidia for dinner shifts until 11:00 pm on weekdays, and 12:00 am on weekends, according to Defendants' policy, though she was required to work later.

80.    On average, Lidia and other similarly situated employees were required to work approximately 2-3 unpaid hours each dinner shift.

81.    Defendants never notified Lidia that her tips were used to offset her wages.

82.    Defendants paid Lidia at a rate of $7.50 per hour.

83.    Defendants also withheld a portion of Lidia's tips each shift, which were used to pay Defendant Alfio Scrivano, and members of the kitchen staff working in the Restaurants.

84.    Defendants did not give Lidia written notice of her rates of pay, claimed allowances, and other such information as required by 12 NYCRR §146-2.2 and NYLL §195(1).

85.    Over the 34 weeks Lidia 22 was employed by Defendants, she worked approximately 88 shifts, for an approximate total of 663.5 hours, approximately 5 of which were overtime hours, and approximately 14 shifts of ten or more hours.

86.    Defendants, as a policy, did not pay Lidia or other bussers and waiters overtime premium for the hours she worked that were greater than forty hours in a work week.

87.    Defendants, as a policy, did not pay Lidia spread-of-hour pay of an additional hour of minimum wage rate pay when she worked ten or more hours in a single day.

### *Plaintiff Beatrice Carolina Bruscoli*

88.    Beatrice Carolina Bruscoli ("Carolina") was employed by Defendants from October 2018 until about February 17, 2019.

89.    Defendants employed Carolinas as a busser and then as a waiter.

90.    Carolina regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

91.    Carolina received paychecks from R&G Soho LLC.

92.    Defendants, according to their continuing policy, required Carolina to train at Defendants' three restaurants: Prince, Spring and Thompson.

93.    Defendants, according to their continuing policy, did not pay Carolina for the first three "training" shifts that he worked at the Restaurants.

94.    Defendants required Carolina and other employees to be available to work shifts at three Restaurants, Prince, Spring and Thompson.

95.    Carolina worked an average of 3.6 shifts, for 24.3 hours, per week.

96.    During her employment, Defendants required Carolina to work lunch shifts from 10:45 a.m. until 5:30 p.m.; dinner shifts at Spring and Prince from 5:00 p.m. until about 1:00 a.m. on week nights, or 2:00 a.m. on weekend nights; and dinner shifts at Thompson from 4:00 pm until about 1:30 a.m. on weekday nights, and as late as 3:00 a.m. on weekends.

97.    Defendants only paid Carolina for dinner shifts until 11:00 pm on weekdays, and 12:00 am on weekends, according to Defendants' policy, though she was required to work later.

98.    On average, Carolina and other similarly situated employees were required to work approximately 2-3 unpaid hours each dinner shift.

99.    Defendants never notified Carolina that her tips were used to offset her wages.

100.    Defendants paid Carolina at a rate of $8.00 per hour from October 29, 2018 to December 16, 2018, and $10.00 per hour from January 14, 2019 to February 17, 2019.

101.    Defendants also withheld a portion of Carolina's tips each shift, which were used to pay Defendant Alfio Scrivano, and members of the kitchen staff working in the Restaurants.

102.    Defendants did not give Carolina written notice of her rates of pay, claimed allowances, and other such information as required by 12 NYCRR §146-2.2 and NYLL §195(1).

103.    Over the 12 weeks Carolina was employed by Defendants, she worked approximately 43 shifts, for an approximate total of 292 hours, approximately 2.5 of which were overtime hours, and approximately 7 shifts of ten or more hours.

104.    Defendants, as a policy, did not pay Carolina or other bussers and waiters overtime premium for the hours she worked that were greater than forty hours in a work week.

105.    Defendants, as a policy, did not pay Carolina spread-of-hour pay of an additional hour of minimum wage rate pay when she worked ten or more hours in a single day.

### *Plaintiff Martina Charlton*

106.    Martina Charlton was employed by Defendants from April 29, 2019 until about April 30, 2019.

107.    Defendants employed Martina as a busser and then as a waiter.

108.    Martina regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

109.    Martina received paychecks from R&G Soho LLC.

110.    Defendants, according to their continuing policy, required Martina to train at Defendants' three restaurants: Prince, Spring and Thompson.

111.    Defendants, according to their continuing policy, did not pay Martina for the first three "training" shifts that he worked at the Restaurants.

112.    Defendants required Martina and other employees to be available to work shifts at three Restaurants, Prince, Spring and Thompson.

113.    Martina worked an average of 4.6 shifts, for 34 hours, per week.

114.    During her employment, Defendants required Martina to work lunch shifts from 10:45 a.m. until 5:30 p.m.; dinner shifts at Spring and Prince from 5:00 p.m. until about 1:00

a.m. on week nights, or 2:00 a.m. on weekend nights; and dinner shifts at Thompson from 4:00

pm until about 1:30 a.m. on weekday nights, and as late as 3:00 a.m. on weekends.

115.    Defendants only paid Martina for dinner shifts until 11:00 pm on weekdays, and

12:00 am on weekends, according to Defendants' policy, though she was required to work later.

116.    On average, Martina and other similarly situated employees were required to

work approximately 2-3 unpaid hours each dinner shift.

117.    Defendants never notified Martina that her tips were used to offset her wages.

118.    Defendants paid Martina at a rate of $11.35 per hour.

119.    Defendants also withheld a portion of Martina's tips each shift, which were used

to pay Defendant Alfio Scrivano, and members of the kitchen staff working in the Restaurants.

120.    Defendants did not give Martina written notice of her rates of pay, claimed

allowances, and other such information as required by 12 NYCRR §146-2.2 and NYLL §195(1).

121.    Over the 9 weeks Martina was employed by Defendants, she worked

approximately 41 shifts, for an approximate total of 305 hours, approximately 4.5 of which were

overtime hours, and approximately 1 shift of ten or more hours.

122.    Defendants, as a policy, did not pay Martina or other bussers and waiters overtime

premium for the hours she worked that were greater than forty hours in a work week.

123.    Defendants, as a policy, did not pay Martina spread-of-hour pay of an additional

hour of minimum wage rate pay when she worked ten or more hours in a single day.

### Defendants General Employment Practices

124.     Each week, Defendants provided Plaintiffs with shift schedules for waiting and

bussing shifts for the following work week consisting of various lunch and dinner shifts. On

14

occasion, the Plaintiffs would be scheduled for double-shifts, which meant that the waiter or busser was required to work back-to-back lunch and dinner shifts on the same day.

125.    Plaintiffs received shift assignments from Defendants for work in any one of three of Defendants' Restaurants located in Manhattan, Prince, Spring or Thompson, and would be required to work at any of these Restaurants as determined by the Defendants.

126.    Defendant Alfio Scrivano served as the general manager for the Restaurants. Scrivano had meaningful authority over the Plaintiffs, the Class and the FLSA Collective Plaintiffs.

127.    Scrivano, together with the founder and primary owner of the Corporate Defendants, Philip Guardione, gave instruction and set Defendants' business and work policies, to the Plaintiffs, the Class and FLSA Collective Plaintiffs in person, via WhatsApp, or other means.

128.    Scrivano trained waitstaff, had the power to set or influence waitstaff work-schedules, and to terminate or discipline waitstaff, including Plaintiffs, the Class and FLSA Collective Plaintiffs.

129.    Defendants assert on their website that Scrivano is a "manager" of Piccola Cucina Group and have published that Scrivano is a "partner" in the business.

130.    When Plaintiffs were first hired, Defendants required them to work three (3) unpaid "training" shifts.

131.    Defendants also required Plaintiffs to attend unpaid classes on wines, throughout their employment.

132.    Defendants required Plaintiffs to work approximately 2-3 additional hours of uncompensated work at the end of every dinner shift in order to bus the tables, take out the trash,

clean the bathrooms, mop the floors, restock inventory, bring boxes of wine upstairs, cut bread,

clean the stations, clean the windows, dust fixtures in the dining room and other similar tasks.

133.    Defendants required Plaintiffs to work these additional unpaid hours, and made it

known that complaining about these policies would result in retribution against the Plaintiffs,

including open ridicule and humiliation, assignment to less favorable shifts, and less favorable

tables, and possibly termination.

134.    The restaurant owners and managers regularly mocked and harassed the Plaintiffs

and other similarly situated employees on the basis of their sex, gender, ethnicity (if not Italian)

and sexual preference, and generally encouraged the kitchen staff and other employees to mock

and harass Plaintiffs on this basis.

135.    As a policy, Defendants paid Plaintiffs at an hourly rate lower than the required

minimum wage in New York.

136.    As a policy, Defendants required Plaintiffs to participate in a tip pool that

included tips from three different restaurants, Prince, Spring and Thompson.

137.    Defendants collected, calculated and distributed the tip pool to waitstaff, bussers,

and other tip-ineligible employees, between the three restaurants at the end of every shift.

138.    Defendants retained approximately $45 from the tips of each waiter or busser at

the conclusion of each shift, and used these retained tips to pay tip-ineligible employees,

including kitchen staff Defendants' managers, including Alfio Scrivano. Plaintiffs paid these tip

amounts under threat of retribution if they complained to Defendants about it, which Plaintiffs

understood would result in the loss of preferred shifts, or tables, as well as humiliation and open

mockery.

139.    Defendants failed to maintain a record of tips earned by Plaintiffs and similarly situated employees for the tips they received.

140.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving waiters and bussers a portion of the tips earned during the course of employment.

141.    Instead of paying Plaintiffs the required New York minimum wage, Plaintiffs were paid "tip credit" minimum wage amount.

142.    However, Defendants did not give Plaintiffs any written notice that they intended to take a tip credit against their minimum wage, as required by NYLL § 195 and 12 NYCRR 146-1.3 (b), nor did Defendants provide any verbal notice that they intended to apply a tip credit to Plaintiffs wages as required under FLSA § 203(m)(2)(A),

143.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

144.    Additionally, under the NYLL, employers must provide tipped employees with written notice that the employer intends to take a tip-credit against the minimum wage.

145.    Defendants retained portions of Plaintiffs tips and failed to provide them notice of Defendants' intent to apply a tip-credit to their wages per NYLL § 195 and 12 NYCRR 146-1.3 (b), and were therefore not entitled to take tip credits against Plaintiffs' wages.

146.    Defendants did not utilize a time clock or any other means to record the time that Plaintiffs worked at the Restaurants for any shift. Instead, Defendants paid waiters and bussers,

including Plaintiffs, based on pre-determined numbers of hours for each shift, whether or not the employee worked longer than the hours pre-set by Defendants.

147.    Plaintiffs regularly worked more than forty-hours in a single week, however Defendants did not pay Plaintiffs premium pay for overtime hours when they worked more than forty hours in a single week.

148.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

149.    Plaintiffs regularly worked double-shifts or long dinner shifts that ended in the early morning hours, working more than ten hours in a single day, but Defendants did not pay Plaintiffs spread-of-hours pay when they worked for more than ten hours in a single day.

150.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 10 hours a day without paying them appropriate additional hour of minimum wage as required by state laws.

151.    At no time did Defendants provide the Plaintiffs' wage notices as required under NYLL §195 (1)(a) and 12 NYCRR § 146-2.2.

152.    At no time did Defendants provide the Plaintiffs with adequate wage statements as required under New York Labor Law § 195 (3) and 12 NYCRR §146-2.3. The wage statements provided by the Defendants did not accurately state the number of hours the Plaintiffs actually worked, did not set forth the statutory minimum wage as required under the laws of New

York, did not state that the Defendants intended to apply a tip-credit as an allowance, and did not set forth the Plaintiffs' overtime rate or overtime hours worked.

153.    Upon information and belief, these payment policies and practices concerning payment under the minimum wage, refusing to pay bussers and waitstaff for all hours worked, refusing to pay overtime, refusing to pay all "spread-of-hours" pay, retaining tips from waiters and bussers to be used to pay managers and kitchen staff, and failure to provide adequate and appropriate wage notices and wage statements, continue today and include all Restaurants, including Prince, Spring, Thompson and Uptown.

154.    Upon information and belief, these practices by Defendants were done willfully pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

155.    Defendants' unlawful conduct was, and, upon information and belief, continues to be, intentional, willful and in bad faith, causing significant damages to Plaintiffs and other similarly situated current and former employees.

B.    <u>DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION</u>.

156.    Plaintiff Emanuele Rigano was an excellent employee and was given increasingly more responsibility as a waiter during the period of time that he worked for Defendants.

157.    Emanuele had a particularly good rapport with customers of the Restaurants, most often while working at the Thompson Street location. Many customers would return to be waited on by Emanuele. He was eventually appointed as a "captain" at the Thompson Street restaurant.

158.   Soon after his appointment as captain, in or about the Spring of 2019, Piccola Cucina ownership and management began to openly and regularly mock and harass Emanuele on the basis of his sexual orientation. This treatment was continual and caustic and affected Emanuele's ability to earn. In addition to this, the Defendants used Emanuele's identity and sexual preference to keep restaurant patrons to stay at the restaurant later at night, and expected Emanuele to stay those additional unpaid hours.

159.   In one instance, on a busy Friday night shift, on or about May 24, 2019, Emanuele was talking to customers at one of his tables about his husband, when Alfio Scrivano came up to the table and stated: "Can you believe this! Two guys kissing?!" The table and Alfio then laughed at Emanuele. He felt humiliated.

160.   In another instance on a busy Saturday night in approximately June 2019, Emanuele was talking to two customers at his table. When Emanuele was telling the customers the story of how he met his husband, Alfio Scrivano appeared at the table and stated to the customers: "How disgusting! Can you believe two men got married?" Scrivano then walked away leaving Emanuele with the customers who were visibly disturbed by Scrivano's comments. Emanuele felt the need to apologize to the customers for Scrivano's mocking comments.

161.   On July 21, 2019, in a Piccola Cucina Group WhatsApp discussion founder Philip Guardione wrote to the group of employees, including managers, chefs, waiters, and included Emanuele, in which Guardione was praising Emanuele's recent performance as a waiter – but in a manner meant to demean and ridicule: "Ho sempre detto che bisogna puntare sui ricchioni" (which in English translates to: "I've always said you should bet on faggots.") Emanuele felt mocked and humiliated by Guardione's statement before the entire work group.

20

162.   On another instance on or about September 29, 2019, during a Sunday lunch at Thompson Street, Emanuele was serving a large table of approximately fifteen Italian customers who were vacationing in New York. Alfio Scrivano came up to Emanuele as he was speaking to the customers about the offerings on the menu, and stated, in Italian in a manner that was clear and intended for the customers to hear: "Hey guys, did he tell you? Emanuele is a fag!" The customers reacted with embarrassment for the incident and were shocked. Emanuele was humiliated.

163.   On another occasion, on or about July 19, 2019, Emanuele was called a "sissy" by the chef after dislocating his right shoulder while performing work duties. Emanuele understood that this comment was intended to mock him on the basis of his sexual orientation.

164.   On Sunday, September 15, 2019, Emanuele was working a double shift when the chef of the restaurant, Andrea Scrivano, brother of Alfio Scrivano, screamed at Emanuele, in front of the entire floor of customers. The reason for the screaming was petty and inconsequential (Emanuele accidentally sold customers ice-cream when the ice cream had been sold out). Emanuele asked Andrea to speak outside rather than to be yelled in front of his customers if there was a problem, and when the two went outside to discuss any issues caused by the ice cream order, Andrea screamed at Emanuele: "Frocio di merda!" which translates in English to "You shitty faggot!" Andrea then continued to yell at Emanuele telling him that he was "working for us!", implying that Emanuele was under the control of Andrea and management. All customers, many of whom spoke Italian, witnessed this confrontation. Alfio Scrivano and Chef Benedetto were aware of this incident but took no action.

165.   On a regular basis, the management used pejorative terms for the employees, and encouraged other employees to use the same pejorative terms. The purpose of this practice was

to humiliate and degrade the object of the derision. specific words for employees—and incited employees to use such language usage—as "handicappato", or handicapped, with the intention of labeling the person as a "retard" or "retarded." The target of this speech was left objectified, humiliated, and degraded especially in front of customers. Voice messages on Plaintiff Rigano's phone document these occurrences. Emanuele and the other waiters and bussers were subjected to continual harassment and pressure to work unpaid hours under threat of retribution for complaining.

166.   This and other conduct directed at Emanuele on the basis of his sexual orientation was consistent and pervasive and created a hostile work environment. Defendants conduct had a negative effect on his performance as a waiter, and eventually the hostility forced Emanuele to leave his employment. Following his employment with the Defendants he received therapy and counselling to deal with the abuse and humiliation he suffered at the hands of the defendants.

C.    DISCRIMINATION ON THE BASIS OF ETHNICITY AND GENDER.

167.    Plaintiff Marlene Sepulveda was an excellent employee and who had approximately four years of prior experience waiting tables in New York City.

168.   Marlene is from a Mexican-American background, and though she speaks Spanish, she does not speak Italian and does not have a background in Italian culture.

169.   Management was abusive to Marlene and the other employees. Guardione used group chats on WhatsApp to curse at and belittle employees concerning their work performance. Guardione and the management did this for the purpose of intimidating waitstaff and bussers and encouraged the kitchen staff to treat waitstaff in the same manner.

170.    Defendants abused and discriminated against Marlene on the basis of her race and ethnicity. Alfio Scrivano would repeatedly taunt Marlene with questions such as "Why aren't you normal?" When Marlene declined to eat the offered meal of pasta, Scrivano would press her: "Why do you refuse our pasta?" "Why can't you be normal and eat pasta like everyone else?" "Why do you need to be different?" "Why aren't you normal?"

171.    On other occasions, Scrivano and others would say to her: "You're not Italian so you don't understand how it works." Defendant managers would tell Marlene: "You have to put in extra effort so you can be as good as an Italian worker" and "You're not doing things right!" with the implication, because you are not Italian.

172.    When Marlene attempted to understand and speak Italian, but she was regularly rebuffed and ridiculed by the managers and kitchen staff, but all of whom refused to speak to her in any other language.

173.    Scrivano and defendants prohibited Marlene from bringing her own food for lunch into the restaurant to eat as an alternative to pasta and would reprimand her by telling her. "If you want outside food, you eat it outside."

174.    On one occasion on a Friday in 2019, a male server who was working with Marlene, exploded with anger when Marlene did not tell him that a bottle of wine was in the refrigerator, yelling at Marlene on the restaurant floor, calling her a "Puttana!" (which means "whore" in Italian) in addition to other vulgarities based on Marlene's sex and gender. Management learned of this incident, blamed Marlene, and immediately following the incident, reduced Marlene's shifts.

175.    On other repeated occasions, a male server at the restaurant would regularly and inappropriately touch Marlene's buttocks. Marlene complained to management about this, but it

was ignored. Marlene feared that she would be retaliated against if she brought it to management's attention a second time.

176.    Piccola Cucina management would regularly evaluate customers based on their appearance and label them as either having money or having no money. When management identified customers they believed had sufficient wealth, Marlene's access to and opportunity to serve those customers, would be restricted.

177.    On one occasion, in 2019, the Piccola Cucina managers judged a table of four tourists from Asia as a "BS table" or a "cheap table," and gave the table to Marlene to serve. Marlene, however, served the table a $500 bottle of wine. When the managers learned that Marlene had sold the expensive bottle to the table of tourists, they became jealous and angry, belittling Marlene by attributing her success to an accident. Mocking Marlene, the Piccola Cucina managers told her to "double check" that the tourists had purchased the bottle.

178.    Though Defendants offered waiters a reward for selling such a bottle of wine during service, such a similar bottle of wine for the waiter who sold it, Alfio Scrivano denied Marlene her reward on an arbitrary basis telling her that "I'm not going to give it to you because you didn't take the wine class. You weren't there for the presentation." Another manager, Misa, joked about Marlene's sale, stating that he would drink her reward on her behalf.

179.    It was apparent from the treatment that she received from the management of Piccola Cucina, that was entirely male and Italian, Marlene was unlawfully harassed, mocked and mistreated based on her ethnicity, sex and gender. The toxic environment forced Marlene to terminate her employment relationship with Defendants. Following this, she suffered anxiety and depression and sought and received therapy and counselling.

## V.    FLSA COLLECTIVE ACTION ALLEGATIONS

180.    Plaintiffs bring the First, Second and Third Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all service employees, other than service managers, employed by Defendants at any of the Restaurants on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

181.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required minimum wage and overtime rates for all hours worked and allowing non- tipped employees to share in their tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

182.    The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## VI.    RULE 23 CLASS ALLEGATIONS – NEW YORK

183.    Plaintiffs bring the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all service employees, other than service managers, employed by Defendants at any of the

Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

184.    All said persons, including Plaintiffs, are referred to herein as the "Class."  The Class members are readily ascertainable. The number and identity of the Class members are determinable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

185.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than sixty (60) members of the Class.

186.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all minimum wage and overtime compensation due, of failing to provide Class members with required wage notices and wage statements, of using amounts from the mandatory tip pool to pay managers and other tip-ineligible employees, of failing to inform Class members that Defendants intended to take a tip-credit.  Defendants' corporate-wide  policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or

wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

187.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

188.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this

action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

189.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

190.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)  Whether Defendants paid Plaintiffs and the Class members the appropriate minimum wage for all hours worked;

c)  Whether Defendants required Plaintiffs and the Class members to work hours and shifts for which they were not paid any amount of hourly wages;

d)  Whether Defendants paid Plaintiffs and the Class members the appropriate overtime wage for all overtime hours worked;

e)  Whether Defendants paid Plaintiffs and the Class members spread-of-hours pay for each day they worked ten or more hours;

f)  Whether Defendants adequately informed Plaintiffs and Class members that Defendants intended to apply a tip credit to Plaintiffs' wage payments;

g) Whether Defendants required Plaintiffs and the Class Members to participate in an unlawful tip pool;

h) Whether Defendants unlawfully misappropriated tips from Plaintiffs and Class members that were redistributed to Defendants' managers and to tip-ineligible employees;

i) Whether Defendants gave Plaintiffs and the Class members the wage statements required by New York Labor Law § 195 and the New York Hospitality Wage Order; and

j) Whether Defendants provided Plaintiffs and the Class members the wage notices required by New York Labor Law § 195 and the New York Hospitality Wage Order.

## FIRST CLAIM FOR RELIEF
### FLSA Minimum Wage Claims
### Brought by Plaintiffs on Behalf of Themselves
### and the FLSA Collective Plaintiffs

191.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all above paragraphs as if they were set forth herein.

192.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the FLSA, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs and FLSA Class Members, controlled the terms and conditions of their employment, and determined the rate and method of compensation in exchange for their employment.

193.     Defendants failed to pay Plaintiffs and the FLSA Collective Plaintiffs the applicable hourly minimum wage rate pursuant to 29 U.S.C. § 206 (a) for each hour worked.

194.   Defendants failure to pay Plaintiffs and the FLSA Collective Plaintiffs the applicable hourly minimum wage rate for all hours was willful within the meaning of 29 U.S.C. §255 (a).

195.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid compensation, liquidated damages as provided by 29 U.S.C. §216 (b), attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**<u>SECOND CLAIM FOR
RELIEF</u>
FLSA Overtime Claims
Brought by Plaintiffs on Behalf of Themselves
and the FLSA Collective Plaintiffs**

196.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all above paragraphs as if they were set forth herein.

197.    Plaintiffs and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek and continue to do so.

198.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs and the FLSA Class members overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week. Defendants' failure to pay Plaintiffs and the FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

199.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by 29 U.S.C. §216 (b), attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**Illegal Tip Retention Under the FLSA**
**Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs**

200.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all above paragraphs as if they were set forth herein.

201.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

202.    The FLSA prohibits any arrangement between the employer and tipped employees whereby any part of the tip received becomes the property of the employer.

203.    Pursuant to 29 U.S.C.A. § 203 (m)(2)(B), Defendants may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

204.    The Defendants unlawfully retained Plaintiffs tips each shift through an unlawful tip pool and redistributed portions of the tips to Defendants' management and other tip-ineligible employees of Defendants.

205.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective misappropriated tips, liquidated damages as provided by 29 U.S.C. §216 (b), attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR
RELIEF**
**New York Labor Law Minimum Wage Claims**
**Brought by Plaintiffs on Behalf of Themselves**
**and the Class**

206.    Plaintiffs, on behalf of themselves and members of the Class, reallege and

incorporate by reference all preceding paragraphs as if they were set forth again herein.

207.    At all relevant times, Defendants employed Plaintiffs within the meaning of

the NYLL §§ 2 and 651.

208.   Defendants knowingly paid the Plaintiffs and members of the Class less than

the New York minimum wage as set forth in NYLL § 652 and supporting regulations of the

New York State Department of Labor, including 12 NYCRR § 146-1.2.

209.    Defendants did not pay Plaintiffs and members of the Class minimum wage

for all hours worked.

210.    Defendants' failure to pay Plaintiffs and members of the Class the minimum

wage was willful within the meaning of NYLL § 663.

211.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and

members of the Class are entitled to an award of damages, including liquidated damages, in

amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as

provided by NYLL §§ 198 and 663.

**FIFTH CLAIM FOR RELIEF**
**New York Labor Law Overtime Claims**
**Brought by Plaintiffs on Behalf of Themselves**
**and the Class**

212.    Plaintiffs, on behalf of themselves and members of the Class, reallege and

incorporate by reference all preceding paragraphs as if they were set forth again herein.

213.    It is unlawful under the NYLL for an employer to require a non-exempt employee to work without paying overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

214.    Plaintiffs and the Class worked in excess of forty (hours per work week and continue to do so, while Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rate. 12 NYCRR §146-1.4.

215.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages of unpaid premium pay, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL §§ 198 and 663.


**SIXTH CLAIM FOR RELIEF**
**New York Labor Law Spread-of-Hours Claims**
**Brought by Plaintiffs on Behalf of Themselves**
**and the Class**

216.    Plaintiffs, on behalf of themselves and members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

217.    Plaintiffs and the Class regularly worked at Defendants' Restaurants for longer than 10 hours per day, whether for double shifts, or for longer dinner shifts.

218.    Plaintiffs and the Class were entitled to be paid one additional hour pay at the basic minimum wage rate for each day their spread of hours exceeded ten hours pursuant to 12 NYCRR § 146-2.4.

219.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages of unpaid spread-of-hours pay, including

liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest,

costs and attorneys' fees as provided by NYLL §§ 198 and 663.

**SEVENTH CLAIM FOR
RELIEF**
**New York Labor Law §196-d Claims for
Misappropriated Tips
Brought by Plaintiffs on Behalf of Themselves
and the Class**

220.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by

reference all above paragraphs as if they were set forth herein.

221.   Plaintiffs, waiters and bussers, received tips on each of their shifts for work done

in Defendants' Restaurants.

222.   Defendants required Plaintiffs and members of the Class to pool their tips to be

distributed in a manner determined and controlled solely by the Defendants.

223.   Employers may not keep tips received by its tipped employees for any purposes,

including allowing managers or supervisors to keep any portion of employees' tips, regardless

of whether or not the employer takes a tip credit. NYLL § 196-d.

224.   At all times relevant to the claims asserted in this complaint, Defendants retained

part of Plaintiffs' tips and used the retained tips to pay or benefit themselves by keeping or

redistributing portions of the tips to Defendants' management and other tip-ineligible

employees of Defendants in willful violation of NYLL § 196-d.

225.    Plaintiffs, on behalf of themselves and the Class, seek damages in the amount

of their respective misappropriated tips, liquidated damages as provided by the NYLL,

attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable

relief as this Court deems just and proper as provided by NYLL. Law §§ 198 and 663.

**EIGHTH CLAIM FOR
RELIEF**

**NYLL Wage Notice Claims**
**Brought by Plaintiffs on Behalf of Themselves**
**and the Class**

226.    Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

227.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay, and basis thereof; allowances, if any, claimed as a part of minimum wage, including tip and meal allowances; the regular pay day designated by the employer, the physical address of employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer. NYLL §195-1(a).

228.    Defendants failed to provide Plaintiffs and the members of the Class with the wage notices required by NYLL § 195-1(a) at the time of hire, or at any time afterwards.

229.    According to NYLL § 198 (1-b), and as a result of Defendants' unlawful conduct, Plaintiffs are each entitled to recover jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorney's fees.

**NINTH CLAIM FOR**
**RELIEF**
**NYLL Record Keeping Claims**
**Brought by Plaintiffs on Behalf of Themselves**
**and the Class**

230.    Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

231.    Upon information and belief, Defendants failed to establish, maintain, and preserve Plaintiffs weekly payroll records, or adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs and the Class, as is required to be preserved for a period of not less than six years, as per NYRR §146-2.1.

232.   Defendants failed to adequately or accurately keep Plaintiffs' written payroll records in order to facilitate their exploitation of Plaintiffs' labor.

233.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial and attorney's fees.

234.   As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**TENTH CLAIM FOR
RELIEF**
**NYLL Wage Notice Claims**
**Brought by Plaintiffs on Behalf of Themselves
and the Class**

235.   Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

236.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d)

237.   Defendants intentionally failed to provide Plaintiffs and the members of the Class with accurate and complete paystub information each payday.

238.   According to NYLL §198 (1-d), and as a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are each entitled to recover jointly and severally, $250 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorney's fees.

**ELEVENTH CLAIM FOR
RELIEF**
**NYCHRL, N.Y. Admin. Code §§ 8-101 *et seq.*,**
**Sexual Orientation Discrimination**
**Brought by Plaintiff Emanuele Rigano
against all Defendants**

239.    Plaintiffs and Class Action Plaintiffs repeat, reiterate, and reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

240.    In violation of NYCHRL, Defendants intentionally discriminated against and/or aided and abetted discrimination against Emanuele on the basis of his sexual orientation.

241.    As a direct and proximate result of Defendants' unlawful conduct, Emanuele Rigano has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future wages.

242.    As a direct and proximate result of Defendants' unlawful conduct, Emanuele Rigano has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiffs' good name and reputation, lasting embarrassment, and humiliation.

243.    Defendants' conduct was outrageous and malicious, was intended to injure Emanuele Rigano and was done with reckless indifference to his statutorily-protected rights.

244.    As a result of Defendants' unlawful conduct, Emanuele is entitled to compensatory damages, including but not limited to damages for economic loss, emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

245.    The New York City Commission on Human Rights will be notified and sent a copy of this complaint.

**TWELFTH CLAIM FOR
RELIEF
NYCHRL, N.Y. Admin. Code §§ 8-101 *et seq.*,
Race and National Origin Discrimination
Brought by Plaintiff Marlene Sepulveda
against all Defendants**

246.    Plaintiffs and Class Action Plaintiffs repeat, reiterate, and reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

247.    In violation of NYCHRL, Defendants intentionally discriminated against and/or aided and abetted discrimination against Marlene Sepulveda on the basis of her sex, gender, race and/or national origin.

248.    As a direct and proximate result of Defendant's unlawful conduct, Marlene has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future wages.

249.    As a direct and proximate result of Defendants' unlawful conduct, Marlene has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Marlene's good name and reputation, lasting embarrassment, and humiliation.

250.    Defendants' conduct was outrageous and malicious, was intended to injure and was done with reckless indifference to Marlene's statutorily-protected rights.

251.    As a result of Defendants' unlawful conduct, Marlene is entitled to compensatory damages, including but not limited to damages for economic loss, emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

252.    The New York City Commission on Human Rights will be notified and sent a copy of this complaint.

VIII.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief and enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(c)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(d)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(e)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(f)     Designating Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

(g)     Awarding Plaintiffs and the Rule 23 Class damages for the amount of unpaid minimum wage, unpaid overtime compensation, and for any improper deductions or credits

taken against wages as applicable wages permitted by law pursuant to the NYLL and its supporting New York State Department of Labor Regulations;

(h)     Awarding Plaintiffs and the Rule 23 Class liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed, as well as for tips retained, improper deductions or credits taken against wages, pursuant to NYLL § 663 and NYLL § 198(3), as applicable;

(i)     Awarding statutory penalties of fifty dollars ($50.00) for each workday that Defendants failed to provide Plaintiffs and the Rule 23 Class with proper annual wage notices, up to a total of five thousand dollars ($5,000.00) per individual in this action, as provided for by NYLL, § 198 (1-b);

(j)     Awarding statutory penalties of two hundred fifty dollars ($250.00) for each workday that Defendants failed to provide Plaintiffs and the Rule 23 Class with accurate wage statements, up to a total of five thousand dollars per individual in this action, as provided for by NYLL, Article 6 § 198 (1-d);

(k)     Awarding applicable pre- and post-judgment interest under the NYLL for unpaid wages and retained tips;

(l)     Awarding reasonable attorneys' fees and costs of the action as per the NYLL; and

(m)     Providing that if any amounts owed pursuant to the NYLL and its regulations remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(n)     Awarding plaintiffs Emanuele Rigano and Marlene Sepulveda compensatory damages under the NYCHRL;

(o)     Awarding Plaintiffs Emanuele Rigano and Marlene Sepulveda punitive damages under the NYCHRL for the knowing and intentional disregard for Plaintiffs' civil rights;

(p)     Granting all such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       January 20, 2021

**MANGAN GINSBERG LLP**

/s/
_____
By: Michael P. Mangan (MM-5773)
*Attorneys for Plaintiffs*
80 Maiden Lane, Suite 304
New York, New York 10005
(212) 248-2170