# MANGAN GINSBERG LLP

80 Maiden Lane, Suite 304
New York, New York 10038
_____
Phone: (212) 248-2170
Fax: (212) 248-2155
mpm@mangan-ginsberg.com

VIA ECF

July 16, 2021

The Honorable Louis Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Emanuele Rigano, et al., v. Piccola Cucina Group, et al.*
              Docket No.: 21 CV 00724 (LJL)

Dear Judge Liman:

      We represent the Plaintiffs Beatrice Carolina Bruscoli, Martina Charlton, Lidia Focacci, Emanuele Rigano, and Marlene Sepulvida in the above-referenced wage-and-hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA") [1], against Piccola Cucina Group, Piccola Cucina Group Inc., MGM Thompson LLC, R&G Soho LLC, R&G Spring LLC, M&G 60th Street LLC, Philip Guardione, and Alfio Scrivano ("Defendants," and together with Plaintiffs, as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). A copy of the Parties' proposed settlement agreement is attached hereto as **Exhibit A**.

## I.    PRELIMINARY STATEMENT

      On January 24, 2021, Plaintiffs, former waitstaff and bussers employed by the defendants, filed a Complaint in this Court against the Defendants, a group of four Manhattan based restaurants under common management and ownership, their associated management and holding companies, and two individuals with alleged ownership and managerial authority over the plaintiffs, asserting claims that Defendants, inter alia, failed to pay plaintiffs all minimum wage and overtime pursuant to the FLSA. See Dkt. No. 1. Specifically, Plaintiffs allege that the Defendants failed to keep time records, failed to pay all hours worked, failed to pay overtime pay, misappropriated the Plaintiffs' tips, in violation of the FLSA. Plaintiffs also alleged the defendants failed to provide wage notices, failed to pay spread-of-hours pay, and failure to

---

[1] Plaintiff also brought claims for Defendants' alleged violations of the New York Labor Law, and NY Executive Law which although resolved in the Parties' settlement agreement, do not require court approval for dismissal. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

provide accurate wage statements, and misuse of the tip credit, in violation of the New York Labor Law. And finally, Plaintiffs Emanuele Rigano and Marlene Sepulveda, alleged that the Piccola Cucina Group, its owners and managers, discriminated against them on the basis of sexual orientation and on the basis of sex and ethnicity, respectively, and by subjecting them to a hostile work environment, resulting in his constructive discharge, in violation of the New York City Human Rights Law § 8–107(1)(a).

An initial conference was held before Your Honor, on March 30, 2021, and a scheduling order was entered thereafter. *See* Dkt. Nos. 44, 45. During the conference, the parties were asked if they would consent to participate in the Court's Mediation Program, and counsel for all parties consented to participate in the program. A Case Management Plan and Scheduling Order was subsequently entered on April 6, 2021.

Prior to, and following the commencement of this action, counsel for the plaintiffs and defendants had been engaged in settlement discussions and had exchanged materials and other information in support of their relative claims and defenses. As a part of these exchanges, counsel for all parties engaged in several discussions over the telephone to clarify their positions and to explain the significance of the underlying materials exchanged.

On March 30, 2021, the Court entered Mediation Referral Order this action for mediation to the Court-annexed Mediation Program. *See* Dkt. No. 43  On May 4, 2021, the Parties participated in a mediation before a Court assigned mediator, attended by the Plaintiffs and two individual defendants, Philip Guardione, Defendants' principal and Chief Executive Officer, and Alfio Scrivano, alleged to be a principal and general manager of the defendant restaurants. Prior to doing so, the Parties submitted *ex parte* statements describing their respective views on liability and damages, as well as Plaintiff's damage calculations.  With the assigned mediator's assistance, the Parties agreed to settle the matter at the conference for the amount  of $200,00.00, inclusive of attorneys' fees and costs.  The Parties have since consented to this Court's jurisdiction for all purposes. *See* Dkt. No. 15.  Through this motion, for the reasons discussed at the conference and described herein, the Parties request that this Court approve the settlement as fair and reasonable and close the case.

Additionally, Plaintiff's counsel respectfully submits an application attorneys' fees of one- third of the total net settlement amount after deduction of litigation expenses, which calculates to $66,533.33, plus $400.00 as reimbursement for their out-of-pocket litigation expenses, which are limited to the filing fee.

## II.    <u>THE AGREEMENT IS FAIR AND REASONABLE</u>

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07.  When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018)  (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y.  Sept. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a

reasonable compromise over contested issues, the settlement should be approved." *Id*. "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Qi Jun Kang v. Jia Xing 39th Inc.*, 2018 WL 4538906, at *1 (S.D.N.Y. Sept. 21, 2018) (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). "The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car- G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *accord In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y.2012). The *Wolinsky* factors consider: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*.

### A.  Range of Possible Recovery

The Piccola Cucina Group is a restaurant group that includes four Italian cuisine restaurants in New York City. Plaintiffs worked in three of these restaurants, all located in the Soho neighborhood of Manhattan, referred to by their street names: Thompson Street, Prince Street and Spring Street.[2] The plaintiffs were trained at all three restaurants, and would sometimes be required to deliver or receive food or materials from one of the other three restaurants during a shift. According to Piccola Cucina Group's website and online social media presence, it is a restaurant group founded by Philip Guardione in or about 2012, and provides Sicilian cuisine.

Plaintiffs allege that none of the New York City Piccola Cucina restaurants recorded the work hours of its waitstaff and bussers by means of a time-clock, or by the use of timesheets, or electronic or mechanical means when these employees began or ended their shifts. The five plaintiffs were given weekly shift schedules and told when they needed to be at the restaurant to start times their shifts, but plaintiffs allege that the actual times these employees arrived at and left work, were never recorded. The plaintiffs allege that they were an hourly wage based on what defendants determined were the standard shift hours, but were required to work additional hours and were never compensated for these additional hours worked. Plaintiffs also allege that the Defendants required each of the plaintiffs, and all newly hired waiters, bussers, to work three (3) unpaid "training" shifts before starting as a paid waiter or busser. Therefore, plaintiffs allege the defendants did not pay the plaintiffs minimum wage for all hours worked. Plaintiffs also

---

[2] A fourth Manhattan Piccola Cucina restaurant was opened on East 60th Street in early 2020. None of the current plaintiffs worked at the East 60th Street location.

allege that the defendants refused to pay them overtime wages when these employees worked more than 40 hours in a week.

The defendants deny that they failed to record the hours their employees worked.[3] Defendants deny that they required all employees to work three (3) unpaid "training shifts" and deny that they failed to give requisite wage notices. Defendants specifically deny that plaintiffs were required to work unpaid hours. Defendants deny that the plaintiffs worked overtime hours for which they were not compensated overtime wages.

Plaintiffs also allege that their hourly pay was reduced by a tip credit taken by defendants, but that the defendants never gave them notice of using the tip credit and also unlawfully retained the plaintiffs' tips. It is not disputed that Piccola Cucina Group required all waiters and bussers to participate in a tip pool consisting of tips pooled from the three restaurants, Thompson, Spring and Prince, for every shift. They were paid a tip amount for the week on the following week's paycheck. Plaintiffs allege that defendants retained 5% of the tip pool. Plaintiffs allege that the defendants required each plaintiff to provide tips to pay dishwashers (who are not considered "tipped employees") and that the defendant Alfio Scrivano was the general manager of the three soho restaurants and that he received tips.

Defendants deny that dishwashers were paid tips, and deny that Alfio Scrivano was a "manager" with "meaningful authority" over the plaintiffs, as those terms are understood pursuant to the FLSA and NYLL. Defendants admit that approximately 5% was taken from the tip pool at each shift, but claim that the amount was taken to offset credit-card clearing fees on tips, as permitted under the FLSA and NYLL.

Plaintiffs also assert wage and hour claims and wage notice violations, under the New York Labor Law and regulations promulgated under the NYLL. Plaintiffs allege that defendants refused to pay spread-of-hours pay when its waiters and bussers worked more than 10 hours in a day. Plaintiffs also allege that defendants failed to provide these employees "wage notices" at the time they were hired (or anytime thereafter) as are required by the New York Labor Law, specifying the employees' rates of pay and any reductions to be taken from their wages, such as a tip credit, or a set-off for a merchant bank's credit-card fees against their tips.  Defendants deny that they failed to provide require notice under the FLSA or NYLL.

In addition to this, two of the plaintiffs, Emanuele Rigano and Marlene Sepulveda, assert claims against the defendants for discrimination and harassment under theories of hostile work environment pursuant to the New York City Human Rights Law. Mr. Rigano, who was a waiter and captain, employed by defendants for just over two years, asserts these claims on the grounds that he was discriminated against on the basis of his sexual orientation, and Ms. Sepulveda asserts claims that she was discriminated against on the basis of sex, gender and ethnicity. These claims are stated in detail in the complaint at paragraphs 156-179. Two of the main actors alleged to be involved in defendants' caustic work environment, are the defendants Philip

---

[3] On August 21, 2020, counsel for the plaintiffs sent defendants a demand letter. (*See* attached Plaintiffs' Aug 21 Demand Letter). This was a start of negotiations with the defendants. Counsel for plaintiff and defendants have spoken by phone on numerous occasions and have exchanged documents and other materials relevant to the claims and defenses in the action that was eventually filed in January 2021 (*see* Jan 26, 2021 Complaint, and both sides are familiar with the arguments and supporting evidence on the other side.

Guardione and Alfio Scrivano. Defendants deny that there is any truth to the allegations of harassment and discrimination.

Based on the hours and wages explained above, the settlement provides Plaintiff with a reasonable recovery under the FLSA considering the misclassification dispute between the Parties. Indeed, Plaintiff's range of recovery is presented as follows:

| | Total Work Weeks | Alleged Total Unpaid Hours | Alleged Differential Reimbursement (Unpaid Tip Credit) | Maximum Plus Liquidated Recovery, Tips, Int. | Total Wages Recovery Amount Received After Fees/Costs | Recovery Percentage Compared to Best Day | Total Recovery Received After Fees/Costs |
|---|---|---|---|---|---|---|---|
| M. Charlton | 9 | 67 | 236 | $6,294.52 | $6,302.06 | 100% | $6,302.06 |
| C. Bruscoli | 12 | 76 | 238 | $7,096.74 | $6,662.71 | 94% | $6,662.71 |
| L. Focacci | 22 | 89 | 896 | $14,094.31 | $11,000.51 | 78% | $11,000.51 |
| M. Sepulveda | 34 | 167 | 1,024 | $22,872.29 | $4,748.03 | 21% | $32,427.09 |
| E. Rigano | 116 | 1,252 | 3,613 | $115,707.08 | $49,261.91 | 43% | $76,940.97 |
| | | | | $166,064.94 | $77,975.22 | 47% | $133,333.34 |

Plaintiffs, as a group,[4] will receive approximately 47% net recovery when compared to their best day, based on the nature of this case, there is a realistic possibility that Plaintiffs would actually receive less if this case had not settled for the amount that it did and proceeded to trial. The greater part of the Plaintiffs' damage calculations come from two categories, the differential tip credit damages on the assertion that the defendants were not entitled to take a tip credit, and for unpaid hours worked, based on Plaintiffs' assertions that the defendants did not record all hours worked. If, for example, a jury were to determine that defendants were entitled to a tip credit, or that the plaintiffs were paid for most if not all hours worked, or that no tips were retained, the Plaintiffs' outcome could be dramatically lower than the amount at which they have agreed to settle. Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages." *See id.* at *3-4 (finding that plaintiffs failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them). Thus, if Defendants produced evidence of good faith, Plaintiffs' maximum recovery would be halved.

Accordingly, the results achieved for Plaintiffs represent fair and reasonable recoveries in light of their best possible results, and therefore this factor favors approval. *See Gervacio v.*

---

[4] Plaintiffs Martina Charlton, Carolina Bruscoli and Lidia Focacci will all receive net amounts greater than 75% of their "best day" damages. Proof of damages for Emanuele Rigano and Marlene Sepulveda would have been more difficult in that they relied upon proof of unrecorded hours worked over longer spans of time, and neither of them worked set schedules.

*ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.  Avoidance of Burdens and Expenses

Second, settling at this stage obviously allows the Parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the Parties would have then been obligated to complete formal written and document discovery and depositions of all parties, which given the fact-intensive nature of the exemption question at issue, would have totaled at least ten individuals and one corporate witness, and then engage in subsequent motion practice. The Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiffs' claims at potentially great expense. At this point in the action, there have been no out-of-pocket litigation expenses incurred save for the filing fee, but if the case had not settled, the costs would naturally balloon. This settlement eliminates all of those costs and delays and this clearly weighs in favor of approval.

### C.  Litigation Risks

Third, of course, all parties face the risk of losing at trial, either in whole or in part. Here, as discussed at the mediation, it is Plaintiffs' position that Alfio Scrivano was assigned the title of "manager," but that he neither possessed the authority to hire or fire any of Defendant's employees, including the Plaintiffs, nor did he provide any input or recommendation into the hiring or firing of any of Defendants' employees, thus removing his tips from the retained tip calculation.

Defendants also forcefully took the position that the plaintiffs were paid for all hours and that no tips were retained by requiring payment to the dishwashers. Additionally, even in the event that Plaintiffs were to succeed on their claims, Defendants could foreseeably establish that they made good faith efforts to comply with the FLSA requirements concerning tip credit eligibility. In light of these attendant risks, the settlement amount weighs in favor of a fair and reasonable result that warrants this Court's approval.

### D.  Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before expending otherwise-inevitable resources on formal discovery. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were pursued on both sides to come to a fair and reasonable compromise, with much-needed assistance from a Court-supervised settlement conference. Indeed, the fact that the Parties' settlement was reached as a result of a court-ordered mediation process, and the Court's appointment of an approved and experienced mediator, who provided guidance and assessment of the "risks of litigation and the benefits of the proposed settlement," bolsters the presumption of fairness. *Romero v. ABCZ Corp.*, 2017 WL 2560004, at *2 (S.D.N.Y. June 12, 2017).

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it, as it does not contain a confidentiality or non-disclosure, or clause that courts routinely find are "abusive or otherwise in strong tension with the remedial purposes of the FLSA." *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). The settlement agreement does contain a mutual general release, which is reasonable in the present case, as courts approve mutual general releases in FLSA cases "in order to bring closure to both sides" where the releases are "negotiated by competent counsel for both sides, releasing both plaintiff and defendants from liability for any such claims each might have against the other. . ." *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016). The fairness of such a release is reasonable where, as in the in the present case, it is brought as a single-plaintiff action. *See id.* Moreover, courts find that where a plaintiff is no longer an employee of the defendant, as is the case here, there is no "danger that the release was obtained through improper job-related pressure." *Id.* (citing *Souza v. 65 St. Marks Bistro*, 2015 WL7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015)).

Furthermore, the Parties' proposed order, submitted with the present motion as **Exhibit B**, requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary. Should the Court decline to endorse that Order and issue its own from scratch, the Parties respectfully request that any such Order include that provision.

### III.    ATTORNEYS' FEES ARE ALSO REASONABLE

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca*, 948 F. Supp. 2d at 366 (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $66,533.33, limited to one-third of the total settlement amount after deducting counsel's litigation expenses from the settlement sum. Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) (stating that "we have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *Flores*, 104 F. Supp. 3d at 306 (noting that the percentage of recovery method is "the trend in this Circuit"); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing

that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery).

Thus, a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiffs' counsel's requested fee of $66,533.33, which is one-third of the net settlement, is entirely reasonable and consistent with that law. Plaintiffs' counsel's retainer agreements with the Plaintiffs, with appropriate redactions, are annexed hereto as a single exhibit, as **Exhibit C**.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72; *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiffs' counsel multiplied the attorney hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiffs' counsel were seeking fees pursuant to the lodestar, Michael P. Mangan, the managing partner, would seek $600 per hour,

The Firm calculated its lodestar to be [$110,000]. Thus, the Firm's requested fee of $66,533.33 is substantially less than that figure. Plaintiff's counsel's contemporaneous billing records are annexed hereto as **Exhibit D**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $400.00 in out-of- pocket expenses, comprised only of the filing fee.

## IV.    **CONCLUSION**

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms.

Respectfully submitted,

/s/

Michael P. Mangan

C:  All Counsel of Record *via* ECF